COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| IN THE MATTER OF H.G.G.D, | | No. 08-08-00280-CV |
| | § | |
| a Juvenile. | | Appeal from the |
| | § | |
| | | 65th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC#0800909) |
| | § | |

**O P I N I O N**

H.G.G.D., Appellant, was adjudicated for delinquent conduct and committed to the Texas Youth Commission. On appeal, Appellant challenges the legal sufficiency of the evidence to support his adjudication. We affirm.

**BACKGROUND**

At 12:41 p.m. on June 22, 2008, Appellant arrived at the Bridge of the Americas, an international port of entry connecting El Paso, Texas with adjacent Ciudad Juarez, Mexico. Appellant was 18 and told Border Patrol Officer Jorge Lopez, who was working as a customs inspector, that he was going to downtown El Paso to buy some tennis shoes. Lopez noticed that Appellant was driving a recently purchased 1982 two-toned brown Ford F-150, and that the registration was expired and referenced different plates than those on the vehicle. There was only one key in the ignition. There were no house keys or any other keys, which Lopez found unnormal. Lopez also observed fresh tool marks on the gas tank and noted it was cleaner than the rest of the undercarriage, which indicated that it had been removed and replaced. Lopez knew, based on past experience, that marijuana was sometimes concealed in gas tanks. Appellant was very nervous, his

hands were moving, and he played with a handkerchief. He avoided eye contact and hesitated before answering any questions. His suspicions aroused, Lopez asked Officer Jose Dominguez to conduct a second declaration.

Dominguez also noted that Appellant's hands were visibly shaky, that he could not maintain eye contact, that he looked uncomfortable, and that he kept looking around. In Dominguez's experience, Appellant's behavior was unusual. Thus, Dominguez advised Lopez that the vehicle should be sent for a more thorough inspection. The vehicle was then placed in a secondary inspection area, and with the aid of a trained canine, 119 yellow bundles of marijuana were found in the gas tank. During the search, Appellant just looked down at the ground. He never said anything.

The bundles field-tested positive for marijuana. Dominguez transported the bundles to the seizure room, weighed them, obtaining a weight of 131 pounds, and waited with them until they were picked up by El Paso Police Officer John Sanchez. Sanchez subsequently transported all of the bundles to the El Paso Police Department's vault. There, he weighed the bundles, obtaining a total weight of 131.80 pounds. Five days before Appellant's trial, Sanchez randomly selected 26 bundles from the lot, obtained samples from those 26 bundles, and sent them for testing. The chemist then weighed those samples submitted and obtained a weight of 102.99 grams. All 26 samples tested positive for 90 percent marijuana. Relying on the number of bundles seized, the chemist determined the weight of the lot of marijuana to be 119.90 pounds.

At trial, Detective Marcela Gil with the El Paso Sheriff's Office testified that the average price per pound of marijuana in El Paso is $220. Thus, 119 pounds of marijuana would presumably be valued at $26,180. However, the price increases farther from the border. For instance, in New Mexico, the valuable cargo would be valued at $35,700, in Oklahoma, the value would be $50,575,

and in Atlanta, the value would be $130,900.

## ANALYSIS

In his sole issue presented on appeal, Appellant contends the evidence was legally insufficient to not only link him to the marijuana, but also to prove he possessed more than 50, but less than 2,000 pounds of the prohibited substance. We disagree.

*Standard of Review*

Although juvenile appeals are categorized as civil cases, we use the same standards applicable in criminal appeals when reviewing challenges to the sufficiency of the evidence supporting a finding that a juvenile engaged in delinquent conduct. *See In the Matter of M.D.T.*, 153 S.W.3d 285, 287 (Tex. App.–El Paso 2004, no pet.). Accordingly, in a legal-sufficiency analysis, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Burden v. State*, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Rather, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *See Adelman*, 828 S.W.2d at 421-22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).

*Links*

To prove delinquent conduct, the State had to show that Appellant "knowingly or intentionally" possessed "a usable quantity of marihuana." TEX. HEALTH & SAFETY CODE ANN. §

481.121(a), (b)(5) (Vernon 2003); TEX. FAM. CODE ANN. § 51.03(a)(1) (Vernon 2008). Possession is defined as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 2003). Thus, the State had the burden to prove beyond a reasonable doubt that the juvenile (1) exercised care, control, and management over the contraband and (2) that the accused knew he possessed contraband. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *In re J.M.C.D.*, 190 S.W.3d 779, 781 (Tex. App.–El Paso 2006, no pet.).

Mere presence at the scene is not sufficient to establish unlawful possession of a controlled substance, but evidence which links the defendant to the controlled substance will suffice to prove that he possessed it knowingly. *McGoldrick v. State*, 682 S.W.2d 573, 578-79 (Tex. Crim. App. 1985). The links must raise a reasonable inference that the accused knew of and controlled the contraband, and may be shown by either direct or circumstantial evidence establishing "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Levario v. State*, 964 S.W.2d 290, 294 (Tex. App.–El Paso 1997, no pet.). The number of links present is less important than the logical force the links have alone or in combination in establishing the elements of the offense. *In re J.M.C.D.*, 190 S.W.3d at 781; *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.–Austin 1991, pet. ref'd).

In *Menchaca v. State*, 901 S.W.2d 640, 644, 652 (Tex. App.–El Paso 1995, pet. ref'd), we found sufficient links to establish possession of marijuana when the evidence showed: (1) the defendant was the sole occupant of the vehicle; (2) the car he drove bore temporary license plates and was borrowed from a friend; (3) the key that operated the car was the only one on the key chain; (4) the defendant was nervous, his hands were shaking, and he avoided eye contact; (5) the amount of marijuana found in the car – 49.5 pounds – was a large and valuable amount; (6) the packages of

marijuana were hidden throughout the vehicle; (7) the defendant was attempting to cross an international border; and (8) a letter found in the vehicle indicated that the defendant, once having crossed the border, would wait for others to discuss the "matter."

We find similar links in this case: (1) Appellant was the sole occupant of the vehicle; (2) the vehicle had been recently purchased from an unknown man and contained expired registration tags and different license plates; (3) the only key present was that in the ignition; (4) Appellant was nervous and uncomfortable, his hands were shaking, and he avoided eye contact; (5) Appellant hesitated before answering questions, played with a handkerchief, and never questioned why he was being detained; (6) the amount of marijuana found was a large amount worth between $26,180 and $130,900; (7) the marijuana was hidden in the gas tank, and the gas tank appeared to be new and recently installed, unlike the rest of the undercarriage of the vehicle; and (8) Appellant was attempting to cross an international border. These links establish, to a requisite level of confidence, that Appellant's connection with the packages of marijuana was more than just fortuitous. *Brown*, 911 S.W.2d at 747. As we noted in *Menchaca*, "Appellant would not have been entrusted in taking the valuable cargo across an international border if he were a mere innocent, ignorant of all the details surrounding his responsibility and the importance of the cargo in his care." *Menchaca*, 901 S.W.2d at 652. In viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have rationally found beyond a reasonable doubt all of the essential elements of the offense charged, including care, control, and management of the marihuana, and that Appellant intentionally or knowingly possessed the contraband.

*Weight*

Appellant also asserts that the evidence was legally insufficient to establish he possessed more than 50, but less than 2,000 pounds of marijuana by asserting that we cannot consider the lab

report, which recited the weight as 119 pounds of marijuana, because the report was inadmissible, nor may we consider Sanchez's testimony that the bundles of marijuana weighed 131.8 pounds, since he failed to comply with Section 481.160(a)(2) of the Texas Health and Safety Code, a provision relating to the photographing of contraband prior to disposal by a law-enforcement agency. However, in conducting a legal-sufficiency review, we must consider all of the evidence presented to the jury, even improperly admitted evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Varkonyi v. State*, 276 S.W.3d 27, 34 (Tex. App.–El Paso 2008, pet. ref'd). Accordingly, even if the lab report or Sanchez's testimony was inadmissible, we may still consider both in determining whether sufficient evidence was presented that Appellant possessed more than 50, but less than 2,000 pounds of marijuana.

Here, the evidence showed that 119 bundles were seized from Appellant's vehicle. Later that day, those bundles were collected by John Sanchez, the evidence custodian. Sanchez weighed the bundles, obtaining a weight of 131.8 pounds, and he later gathered samples from 26 randomly selected bundles and sent them for testing. The chemist determined that all 26 samples submitted were marijuana, and based on the weight received from Sanchez, determined that there was at least 119 pounds of marijuana. We believe this evidence was legally sufficient to establish Appellant possessed more than 50, but less than 2,000 pounds of marijuana.

Nevertheless, Appellant contends that the chemist was personally required to weigh each bundle of marijuana.[1] Appellant cites to no cases holding that the burden to weigh each package

---

[1]  Appellant does not dispute the random-sampling procedure followed for testing the substances in this case, nor does he contest that all the bundles contained marijuana; therefore, we make no determination as to whether the procedure was in accordance with similar cases supporting the random-sampling method. *See Zone v. State,* 118 S.W.3d 776, 777 (Tex. Crim. App. 2003); *Melton v. Stat*e, 120 S.W.3d 339, 342 (Tex. Crim. App. 2003); *Gabriel v. State*, 900 S.W.2d 721, 722 (Tex. Crim. App. 1995) (chemical testing of the contents of some narcotics while visually inspecting the others for same appearance was a proper method to determine whether all seized items were narcotics).

rests solely with the testing chemist, and we have found none. Rather, an expert may "rel[y] in whole or part upon information of which he has no personal knowledge, communicated to him at or before the time he testifies," as long as he "has a sufficient basis for his opinion." *Aguilar v. State*, 887 S.W.2d 27, 29 (Tex. Crim. App. 1994). In *Cole*, Judge Maloney noted that "'[i]t is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others.'" *Cole v. State*, 839 S.W.2d 798, 814-15 n.3 (Tex. Crim. App. 1992) (Maloney, J., concurring) (quoting *Reardon v. Manson*, 806 F.2d 39 (2nd Cir. 1986), *cert. denied*, 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987)). Appellant does not contend that Sanchez was unqualified to weigh the bundles of marijuana, nor that the State failed to establish the beginning or the end of the custody chain. Nor does he contest that Border Patrol Officer Dominguez also obtained a weight of 131 pounds and field-tested all the bundles, obtaining positive results for marijuana. Accordingly, under the facts of this case, we believe the chemist could have relied on the weight Sanchez obtained in determining whether there existed more than 50, but less than 2,000 pounds of marijuana.

## CONCLUSION

Having found the evidence legally sufficient to establish Appellant possessed more than 50, but less than 2,000 pounds of marijuana, we overrule Appellant's sole issue. The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

February 24, 2010

Before Chew, C.J., McClure, and Rivera, JJ.