COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF D.R.T., a juvenile. | § | No. 08-10-00124-CV |
| | § | Appeal from the |
| | § | 323rd District Court |
| | § | of Tarrant County, Texas |
| | § | (TC# 91865J) |
| | § | |

**O P I N I O N**

D.R.T., Appellant, was adjudicated for delinquent conduct, namely, murder, and committed to the Texas Youth Commission for thirty years. On appeal, he contends, in a single issue, that the evidence was insufficient to establish his identity as the shooter. For the reasons that follow, we affirm.

**BACKGROUND**

On their way home from the movies, Z.L. and Jose Soto were stopped in their car at a red light when another car containing five males, including Appellant, pulled next to them. Appellant then screamed "BG-9" and started shooting. Z.L. said, "Let's go," and Soto stepped on the gas. As they sped away, Z.L. was shot in the head. She later died from the gunshot wound.

**DISCUSSION**

Appellant's sole issue on appeal challenges the factual sufficiency of the evidence. Although juvenile appeals are categorized as civil cases, we use the same standards applicable in criminal appeals when reviewing challenges to the sufficiency of the evidence supporting a finding that a juvenile engaged in delinquent conduct. *See In re H.G.G.D.*, 310 S.W.3d 43, 45 (Tex. App. – El

Paso 2010, no pet.); *In the Matter of M.D.T.*, 153 S.W.3d 285, 287 (Tex. App. – El Paso 2004, no pet.). Previously, those challenges could include a legal-sufficiency contention, a factual-sufficiency contention, or both. However, after Appellant filed his brief, the Court of Criminal Appeals held that the *Jackson* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, we will only review the evidence under the *Jackson* standard.

*Standard of Review*

Pursuant to *Jackson*, we must review "the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19. This standard gives full play to the responsibility of the trier of fact in resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 318-19. Indeed, we, as a reviewing court, do not resolve any conflicts of fact or reevaluate the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Instead, our role is limited to determining whether both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). As such, if the record supports conflicting inferences, we presume that the fact finder resolved any inconsistencies in favor of the verdict and defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). The same standard of

review is applicable for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

*Application*

In challenging the sufficiency of the evidence, Appellant only contests whether there was sufficient evidence presented to identify him as the shooter. Certainly, the State must prove that Appellant was the perpetrator of the criminal offense beyond a reasonable doubt. *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App. – Houston [14th Dist.] 2001, pet. ref'd). However, that proof of identity may be had by direct or circumstantial evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

Here, Soto repeatedly identified Appellant as the shooter during trial. He testified that Appellant was only three to four feet away from him, had his head out the window, and was yelling "BG-9" at him. His statements to the police that followed the shooting were similar to his testimony at trial in that he heard the shooter identify himself as "BG-9." Soto identified Appellant before trial in a photospread, and during trial, Soto expressly stated that he was one-hundred percent sure that Appellant was the shooter. Soto's identifications alone were sufficient to support a finding that Appellant was the shooter. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App. – Houston [14th Dist.] 2005, pet. ref'd) (cases holding eyewitness's testimony alone sufficient to identify defendant as the perpetrator).

Moreover, other evidence in the record identifies Appellant as the shooter. Indeed, Elier Agundis, who knew Appellant for a couple of months before the shooting, Nataly Puente, who was the former girlfriend of one of Appellant's gang members, and Veridiana Castaneda, who was

friends with Appellant on her MySpace page, identified Appellant as "BG-9." And although Soto provided a picture to the police of Castaneda's MySpace "BG-9" friend, Officer Miller, a gang expert, identified Appellant as a suspect based on book-in photos of "BG-9" before ever seeing the picture Soto provided. This testimony, in conjunction with Soto's recitation of the shooter's "BG-9" remarks, provides further evidence that Appellant was the shooter. *See Lee v. State*, 239 S.W.3d 873, 878 (Tex. App. – Waco 2007, pet. ref'd); *Lewis v. State*, No. 05-94-01803-CR, 1996 WL 348181, at *2 (Tex. App. – Dallas Jun. 20, 1996, pet. ref'd) (op., not designated for publication) (cases holding testimony identifying shooter by nickname legally sufficient evidence to support conviction).

Finally, the record reflects that Agundis was at Cruz Duenas' house on the day of the shooting when Appellant arrived with a nine millimeter pistol and relayed that he was "itching" to use it. Agundis left soon thereafter, and later that night, at about 3 a.m., he learned that Z.L. was killed. The next day, Agundis saw Appellant, who bragged about shooting the gun although he also stated that he "didn't mean to shoot that bitch." Such testimony, although circumstantial, when combined with the other evidence admitted at trial, also points to Appellant as the shooter. *See Shavers v. State*, 881 S.W.2d 67, 73 (Tex. App. – Dallas 1994, no pet.) (evidence was sufficient where record showed defendant was trying to acquire a .25 caliber gun on the day of the shootings and that he later bragged to cell mates about the incident); *Nguyen v. State*, No. 05-06-00403-CR, 2008 WL 3823980, at *4 (Tex. App. – Dallas Aug. 18, 2008, pet. ref'd) (op., not designated for publication) (evidence was sufficient to establish identity when victim unequivocally identified defendant as assailant and defendant later bragged to another gang member about the incident).

Nevertheless, Appellant argues that neither Soto nor Agundis were credible witnesses. In

attacking Soto, Appellant contends that his description to the police after the shooting, namely, that the shooter was Hispanic with black hair and appeared to be either 18 or 19 years old, was too vague. He also asserts that Soto told the police, at one point, that he did not recognize the shooter, and seemingly suggests that his identification was tainted when he saw Castaneda's picture of "BG-9." For support, he relies on *In re N.K.M.*, Nos. 04-09-00717-CV, 04-09-00718-CV, 2010 WL 3443210 (Tex. App. – San Antonio Sept. 1, 2010, no pet.) (mem. op., not designated for publication), where the witness stated, after first identifying the defendant, that "I'm not positively sure, but I think so." *Id*. at *5. According to the court, that in-court identification was uncertain, and therefore, insufficient by itself to support a guilty verdict. *Id*. at *6.

However, we find the facts here distinguishable from those in *In re N.K.M.* First, as discussed above, Soto's identification in this case was one-hundred percent certain. Nothing in the record indicates that he was confused or vacillating on identifying the shooter. Second, Soto never testified that he did not recognize Appellant from the photospread; rather, he testified that he did not know Appellant personally but that he could recognize him, and Soto unequivocally picked Appellant from the photospread. Lastly, Soto denied that viewing Castaneda's picture of Appellant helped him choose Appellant from the police photospread. Instead, he testified that the picture was simply provided to aid the police in their search for the perpetrator. Moreover, we note that Soto was only three to four feet away from Appellant when the incident occurred, that Soto was certain that Appellant was the shooter, that only 15 to 20 minutes passed until Soto spoke to the police, and that he later unequivocally identified Appellant from the police photospread the next day. Thus, we cannot conclude that Soto's identification was so tainted such that there was a substantial likelihood of irreparable misidentification. *See Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993)

5

(stating that in determining whether there was a substantial likelihood of irreparable misidentification, courts should look to the following factors: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the amount of attention the witness devoted to observing the criminal; (3) the accuracy of the description; (4) the witness's level of certainty at the time of the confrontation; and (5) the length of time between the crime and the confrontation).

Turning to Agundis, Appellant contends that his testimony was incredible since he told the jury that he did not want to testify and had trouble recalling particular statements and incidents. However, whether Agundis, and to a large extent, Soto, was a credible witness was a matter for the jury, and we must afford due deference to their determination in reviewing the evidence in the light most favorable to the verdict. *See Morris v. State*, No. 06-09-00171-CR, 2010 WL 1664023, at *4 (Tex. App. – Texarkana Apr. 27, 2010, pet. ref'd) (mem. op., not designated for publication) ("Certainly, the testimony of each of the eyewitnesses could be disbelieved in varying degrees; yet, the jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony" [and] "we afford 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'") (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). As the jury chose to convict, we not only presume that the jury resolved any inconsistencies or conflicts in favor of the verdict and chose to find those portions of Agundis' and Soto's testimonies that support the verdict true, but we must also defer to that determination. *Clayton*, 235 S.W.3d at 778; *Curry*, 30 S.W.3d at 406.

In short, after reviewing the evidence, we cannot conclude that the evidence was insufficient to identify Appellant as the shooter. Soto's identification was conclusive and other evidence in the record supported Soto's identification. Accordingly, we find the evidence sufficient and overrule

6

Appellant's sole issue.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

March 23, 2011


Before Chew, C.J., McClure, and Rivera, JJ.