COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
  
  
 IN THE MATTER OF I.L., A JUVENILE
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00273-CV
  
                          Appeal from
  
 65th District Court
  
 of El Paso County,
 Texas
  
 (TC # 09,00648)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

            I.L. was adjudicated delinquent
after a jury found that he had engaged in delinquent conduct by committing
assault causing bodily injury.  Following
a hearing, the trial court issued a final judgment without disposition.  On appeal, I.L. complains of charge error and
evidentiary sufficiency.  For the reasons
that follow, we affirm.   

FACTUAL BACKGROUND

            On April 23, 2009, the students in
Jose Montoya’s art class at Desert Wind Middle School were given their routine
bathroom break.  The class was made up of
both 7th and 8th grade students. 
Appellant was in 8th grade at the time and I.M., the victim, was in 7th
grade.  

            While the students took their break,
Montoya went across the hall to the teachers’ facility.  When he returned to the classroom he noticed
I.M. at the back of the class, “not his normal self.”  Montoya spoke with the boy, who told him, “The
guys threw me in the trash can.”  I.M.
was visibly upset, crying, in distress, and in pain. 

            Montoya took Appellant and two other
boys--E.C. and D.G.--outside the classroom. 
The trio admitted to throwing I.M. in the trash can.  Appellant claimed they did it because I.M.
was “little.”  The boys also said it was
a joke and they were just playing.  Montoya
gave the boys a chance to apologize, but Appellant simply said, “I’m sorry, because
you’re just such a little shit.”  In Montoya’s
opinion, Appellant showed no remorse for his actions and even laughed while he
apologized.  Montoya then headed to file
a report when Marco Tristan, the Dean of Instruction, walked down the hallway.  Tristan took the three boys down to his
office.  

            Once inside his office, Tristan
asked the boys what happened.  The boys
were “very apologetic.”  Appellant
claimed he had been the main instigator and asked Tristan to dismiss the other
two boys.  Tristan also spoke with
I.M.  As a result of their conversation, Tristan
decided that I.M. had not been playing.  He
called I.M.’s mother, the parents of the three boys, and the Socorro
Independent School District’s Police Department.  

            The following day, Officer Jorge
Murillo of the Socorro Independent School District Police Department went to
Desert Wind Middle School to investigate the incident.  He spoke with I.M.’s parents and also with
I.M. directly.  Officer Murillo testified
that he observed red marks on the back of I.M.’s neck as well as a scratch on
the left side of his stomach.   

            I.M.’s mother testified that her son
was physically injured as a result of the incident.  The boy’s neck and waist area were hurt, and there
were marks and bruises on his neck and hand.  There was also swelling and it took three days
for her son to recover.  

            I.M. testified that when he left the
classroom, the restroom was full and he waited outside.  Appellant, E.C., and D.G., grabbed him by his
neck and pushed him head first into a trash can.  I.M. resisted by putting his hands on the
edge, but the three boys overpowered him.  He fell down, hit his head, and heard his neck
pop. As he tried to pull himself out, the boys shoved him down a second
time.  He again hit his head and heard
his neck pop.  At one point, the trash can
was knocked over.  The scenario was
repeated yet a third time.  During the
incident, the boys were laughing at him and he was crying.  

            The defense called E.C. and D.G. as
witnesses.  E.C. testified that he,
Appellant, D.G., and I.M. were playing with a soccer ball in Montoya’s class
just before the restroom break. 
According to E.C., the boys were all playing around and having a good
time.  No one was angry at I.M. or trying
to hurt him.  E.C. testified that the
boys grabbed I.M. and put him inside the trash can, but he reiterated that all
of the boys, including I.M. were “playing,” and that no one punched or kicked
the trash can during the incident.  E.C. also
testified that he did not intend to hurt I.M. when he pushed him into the trash
can.  D.G.’s testimony essentially
tracked that of E.C.  All of the boys were
engaged in horseplay in Montoya’s classroom just before the bathroom
break.  D.G. had no ill will against I.M.
and had no reason to want to hurt him.  

            Appellant testified in his own
defense, claiming that all four boys were horsing around with a soccer ball
prior to their break.  He heard someone
say, “Let’s--let’s throw [I.M.] to the trash can.”  Appellant admitted that he grabbed I.M. by
the legs and threw him into the trash can but he did not intend to hurt him.   He did
not see I.M. crying, but he knew the boy was upset during the incident.  Appellant apologized, but he denied cussing
when doing so.  

procedural
background

            On August 21, 2009, the State filed
a petition alleging that Appellant engaged in delinquent conduct.  The live pleading at trial alleged Appellant:

[D]id then and
there intentionally, knowingly or recklessly cause bodily injury to [I.M.] by
throwing the said [I.M.] into a trash can, in violation of Section 22.01 of the
Texas Penal Code. 

 

The case
proceeded to a jury trial.  

            After hearing all the evidence, the
jury found Appellant engaged in delinquent conduct by committing assault
causing bodily injury against I.M. and adjudicated Appellant as delinquent.  The presiding judge signed and filed an order
of adjudication consistent with the jury’s verdict and set a disposition
hearing.  After considering the evidence
and the pre-disposition report, the court found that Appellant’s parents “provide
strong family support” and were able to provide Appellant with “suitable
supervision at home.”  It determined that
Appellant was not in need of rehabilitation and issued a final judgment without
disposition.

            On appeal, Appellant raises two
issues.  In Issue One, he complains of
charge error.  In Issue Two, he
challenges the legal sufficiency of the evidence to prove he acted with the
requisite mental state.

charge
ERROR

            In Issue One, Appellant contends
that the abstract portion of the jury charge wrongfully included the full
statutory definition of “recklessly,” one of the three possible mental states
for assault causing bodily injury.  According
to Appellant, the definition should have been limited to the language relating
to the “result of conduct” and that, as submitted, the charge allowed the jury
to adjudicate him delinquent for engaging in reckless behavior (a
conduct-oriented charge) rather than recklessly injuring the complainant (a
result-oriented charge).  Appellant
contends this amounts to fundamental and reversible error.

Standard
of Review

            Appellate review of charge error
involves a two-step process.  Abdnor v. State, 871 S.W.2d 726, 731
(Tex.Crim.App. 1994); see also Sakil v.
State, 287 S.W.3d 23, 25-26 (Tex.Crim.App. 2009).  First, we must determine whether error
occurred.  Abdnor, 871 S.W.2d at 732.  If
so, we must then evaluate whether sufficient harm resulted from the error to
require reversal.  Id. at 731-32. 

Was
There Error?

            We begin our inquiry by examining whether
there was error in the charge.  The
petition alleged that Appellant committed assault by “intentionally, knowingly,
or recklessly” causing bodily injury to I.M. in violation of Section 22.01 of
the Texas Penal Code.  The full statutory
definitions of “intentionally,” “knowingly,” and “recklessly” provide: 

(a) A person acts intentionally, or with
intent, with respect to the nature of
his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result.

(b)
A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his
conduct or that the circumstances exist. 
A person acts knowingly, or with knowledge, with respect to a
result of his conduct when he is aware that his conduct is reasonably certain
to cause the result.

(c) A person acts
recklessly, or is reckless, with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  The risk must be
of such a nature and degree that its disregard constitutes a gross deviation
from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor’s standpoint.

 

Tex.Penal Code Ann. § 6.03(a), (b),
& (c)(West 2011).  Here, the abstract
portion of the charge limited the definitions of “intentionally” and “knowingly”
to the result-of-conduct language: 

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or
desire to cause the result.

A
person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that
his conduct is reasonably certain to cause the result.  [Emphasis in original].

However, the
charge included the full statutory definition of “recklessly.”  In other words, the definition included the
phrase “with respect to circumstances
surrounding his conduct or the
result of his conduct.”  [Emphasis added].  

            On appeal, Appellant’s complaint is
based on the italicized text.  He
maintains that the italicized language should have been excluded because, as
written, the charge allowed the jury to adjudicate him delinquent for engaging
in reckless behavior (a conduct-oriented charge) rather than recklessly
injuring the complainant (a result-oriented charge).  We agree.[1]

            There are three conduct elements
which may be involved in any offense:  (1)
the nature of the conduct; (2) the result of the conduct; and (3) the
circumstances surrounding the conduct.  See Hughes v. State, 897 S.W.2d 285, 295
n.14 (Tex.Crim.App. 1994), cert. denied,
514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); Cook v. State, 884 S.W.2d 485, 487 (Tex.Crim.App. 1994).  As the Court of Criminal Appeals laid out in Hughes and Cook, a proper jury charge limits the definitions of the applicable
culpable mental states to include only the language regarding the relevant conduct
elements.  See Hughes, 897 S.W.2d at 295-96; Cook, 884 S.W.2d at 491-92.  

            In Cook, the defendant was charged with murder and convicted of the
lesser included offense of voluntary manslaughter.  Cook,
884 S.W.2d at 485, 487.  The definitions
of the applicable mental states--“intentionally” and “knowingly”--included the
full statutory definitions.  Id. 
The defendant objected to the charge, arguing that because murder is a result-of-
conduct offense, the definitions of the culpable mental states should have been
limited to the result language only.  Id. at 486.  The Court of Criminal Appeals agreed and held
that because murder is a result-of-conduct offense, the trial court erred in
refusing to limit the definitions of the culpable mental states.  Id.
at 491-92.  

            Similarly, in Hughes, a jury convicted the defendant of capital murder of a peace
officer based on a jury charge which included the following definitions of the
applicable mental states: 

A person acts ‘intentionally,’ or with
intent, with respect to the nature of his conduct or to a result of his
conduct when it is his conscious objective or desire to engage in the
conduct or cause the result.

A
person acts ‘knowingly,’ or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist. A person acts
knowingly, or with knowledge, with respect to a result of his conduct when he
is aware that his conduct is reasonably certain to cause the result.  [Emphasis in original].

Hughes, 897 S.W.2d at 294.  The appellant complained that the italicized portions
allowed the jury “to find criminal liability from the knowledge of conduct or
circumstances surrounding the conduct (ie; intent to pull trigger) rather than
from the consequences or results of the conduct (intent to cause death of
deceased).”  Id. at 295.  The Court of
Criminal Appeals looked to the indictment and found that the offense could be
viewed to include two of the three conduct elements:  (1) the result-of-conduct element (appellant
intentionally or knowingly caused the death of the deceased); and (2) the
circumstances surrounding the conduct (appellant knew the deceased was a peace
officer).  Id. at 295.  But because the offense
did not contain a nature-of-conduct element, the court found the trial court
erred by failing to limit the definitions of the culpable mental states to the
result and circumstances of conduct elements. 
Id. at 296, citing Cook, 884 S.W.2d at 491-92.  

            Assault causing bodily injury is a
result-oriented offense.  Therefore, the
proper definitions of the culpable mental states (intentionally, knowingly,
recklessly) should be limited to include only the result of conduct element.  See
Hughes, 897 S.W.2d at 295; Cook,
884 S.W.2d at 489 n.3.  Accordingly, the
trial court erred.  See Hughes, 897 S.W.2d at 296; Cook,
884 S.W.2d at 491-92.  We must now
analyze the error for harm.  See Ngo v. State, 175 S.W.3d 738, 743
(Tex.Crim.App. 2005). 

Harm
Analysis

            Under both the civil and criminal
rules of procedure, a party must make a timely, specific objection and obtain a
ruling on that objection to preserve error for appeal.  See Tex.R.App.P. 33.1.  Both versions provide that unpreserved charge
error will not require reversal unless it rises to the level of fundamental
error.  See In the Matter of A.A.B., 110 S.W.3d 553, 558 (Tex.App.--Waco
2003, no pet.), citing State v. Santana,
444 S.W.2d 614, 615 (Tex. 1969) and Casteel-Diebolt
v. Diebolt, 912 S.W.2d 302, 304 (Tex.App.--Houston [14th Dist.] 1995, no
writ)(cases recognizing that, in a civil trial, when an appellant fails to
properly preserve errors in the charge by objection or request, he may still
obtain a reversal of a civil judgment on the basis of such error if he can
demonstrate that the error amounts to “fundamental error.”); see also Almanza v. State, 686 S.W.2d
157, 171 (Tex.Crim.App. 1984)(op. on reh’g)(in a criminal case, an appellant
who failed to object to a flawed instruction must demonstrate the error was “fundamental
error.”).  Under the civil rules, an
error is fundamental when it “directly and adversely affects the interest of
the public generally, as that interest is declared in the statutes or
Constitution of this state.”  In the Matter of A.A.B., 110 S.W.3d at
558, citing Ramsey v. Dunlop, 146 Tex. 196, 202, 205 S.W.2d 979, 983 (1947), cited by Santana, 444 S.W.2d at 615; accord In re C.O.S., 988 S.W.2d 760, 765
(Tex. 1999).  Conversely, in criminal
cases, error is fundamental only if it was so egregious and created such harm
that the appellant was denied a fair and impartial trial.  See
Almanza, 686 S.W.2d at 171. 

Unless
there is a conflict within the Texas Family Code, juvenile proceedings are governed
by the Texas Rules of Civil Procedure.  Tex.Fam.Code Ann. § 51.17(a)(West 2008);
In the Matter of M.R., 858 S.W.2d
365, 366 (Tex. 1993); In the Matter of
M.P., 126 S.W.3d 228, 230 (Tex.App.--San Antonio 2003, no pet.).  Since there is no specific provision
governing jury charges in juvenile cases, the Rules of Civil Procedure govern.  See In
the Matter of M.P., 126 S.W.3d at 230, citing
In the Matter of A.A.B., 110 S.W.3d 553, 555-56 (Tex.App.--Waco 2003, no
pet.); In re D.I.B., 988 S.W.2d 753,
756 (Tex. 1999)(noting that juvenile delinquency proceedings are to be governed
by the civil rules of appellate procedure as far as practicable.).  

            But juvenile proceedings are not
wholly civil proceedings; they are considered “quasi-criminal in nature.”  In re
C.O.S., 988 S.W.2d 760, 765 (Tex. 1999); In the Matter of L.D.C., 357 S.W.3d 124, 129 (Tex.App.--San Antonio
2011, pet filed); In the Matter of G.M.P.,
909 S.W.2d 198, 201 (Tex.App.--Houston [14th Dist.] 1995, no writ).  The Texas Supreme Court has acknowledged that
the general rules applicable in adult civil proceedings cannot be uniformly
applied in juvenile proceedings.  In re D.I.B., 988 S.W.2d at 756; see also In re C.O.S., 988 S.W.2d at 765
(expressing concern with the problems in applying different preservation rules
in juvenile delinquency proceedings than in adult criminal proceedings and
stating, “Our general rules requiring preservation in the trial court are just
that, general rules, and cannot be applied across the board in juvenile
proceedings.”); Santana, 444 S.W.2d at
615 (noting that “juvenile proceedings are not designed to be conducted as
ordinary adversary proceedings”).  The court
in C.O.S. also noted that it is “unwise
and problematic to apply one preservation rule in adult, criminal proceedings
and another, stricter rule in juvenile cases.”  In re
C.O.S., 988 S.W.2d at 767.  Thus, the
court found that precedent from analogous adult criminal proceedings may be
instructive in juvenile cases.  See id. at 765-67; see also In re D.I.B., 988 S.W.2d at 756 (looking to adult criminal
jurisprudence to determine when a harm analysis should be performed in juvenile
delinquency proceedings).

            The difficulty in applying the law
based on this interaction between the civil and criminal rules is apparent in
situations where, as here, the reviewing court must determine whether to
perform a harm analysis under the civil or criminal standard for reversible
error.[2]  See In
re L.D.C., 357 S.W.3d at 131.  Courts
of appeals have repeatedly noted the lack of guidance.  See In re
L.D.C., 357 S.W.3d at 131-32, 132 n.2 (stating, “Neither the Rules of Civil
Procedure nor the Texas Family Code provide clear guidance as to whether to
apply a civil harm analysis or a criminal harm analysis for juvenile jury
charge error,” and citing several opinions discussing the problem.); see also In the Matter of A.C., No.
11-09-00164-CV, 2011 WL 3925516, at *6 (Tex.App.--Eastland Sept. 8, 2011, pet.
denied)(recognizing the discrepancies between courts in choosing whether to
apply civil or criminal rules to the harm analysis); In re M.P., 126 S.W.3d at 231-32 (noting disagreement between the
courts of appeals as to the proper harm analysis for jury charge error in
juvenile delinquency proceedings but holding that the court did not have to choose
between a criminal and a civil harm analysis because the result in the case
would be the same under both).  The
differing approaches illustrate the problematic nature of  quasi-criminal status.  Several intermediate courts have chosen to
apply Article 36.19 of the Texas Code of Criminal Procedure and Almanza to determine whether charge
error has been preserved in juvenile delinquency proceedings.  See In the
Matter of K.W.G., 953 S.W.2d 483, 488 (Tex.App.--Texarkana 1997, pet.
denied)(applying the Almanza
egregious harm standard to a juvenile delinquency proceeding because “charging
errors affect the substantive rights of juveniles”); In the Matter of B.S.A., No. 03-04-00319-CV, 2006 WL 954095, at *3
(Tex.App.--Austin Apr. 13, 2006, no pet.)(mem. op.)(using the Almanza harm analysis to analyze whether
unpreserved error was “fundamental error”); In
the Matter of C.M., No.  11-02-00150-CV, 2003 WL 1414436, at *2
(Tex.App.--Eastland Mar. 20, 2003, no pet.)(mem. op.)(applying Almanza egregious harm standard to jury
charge error).  However, the Waco court
in In re A.A.B., 110 S.W.3d 553
(Tex.App.--Waco 2003, no pet.), applied
a civil harm analysis to charge error, thus disavowing their earlier opinion in
In the Matter of M.E.R., 995 S.W.2d
287 (Tex.App.--Waco 1999, no pet.) in which they analyzed preservation of jury
charge error under the Almanza standard.[3]  See In
re A.A.B., 110 S.W.3d at 555-59; In
re M.E.R., 995 S.W.2d at 291. 

            Appellant failed to object to the
definition of “recklessly” either during the charge conference or at any other
point during trial.[4]  Under Texas Rule of Appellate Procedure 33.1,
he has preserved nothing for appeal. [5]  He attempts to avoid this procedural default
by classifying the error as fundamental.  

            The burden is higher for an
appellant trying to reverse a civil judgment based on unpreserved error, than
for an appellant in a criminal matter. 
In light of the Supreme Court’s concerns in applying one rule in adult
criminal proceedings and another, stricter rule in juvenile cases, we choose to
conduct our harm analysis under the criminal standard set forth in Almanza.  See In
re C.O.S., 988 S.W.2d at 767.

            We have already determined there was
error in the jury charge.  Under Almanza, an appellant who did not
preserve error, as here, must show he suffered “fundamental error.”  Almanza,
686 S.W.2d at 171.  An error is “fundamental”
only if it was so egregious and created such harm that the appellant was denied
a fair and impartial trial.  Id.  In assessing harm arising from charge error,
we must determine the actual degree of harm in light of:  (1) the entire jury charge; (2) the state of
the evidence, including the contested issues and weight of probative evidence;
(3) the argument of counsel; and (4) any other relevant information revealed by
the record of the trial as a whole.  Almanza, 686 S.W.2d at 171.

            First, we look to the charge as a
whole.  The Hughes court determined the trial court erred by including the full
statutory definitions of “intentionally” and “knowingly” in the abstract
portion of a capital murder jury charge. 
Hughes, 897 S.W.2d at
295-96.  However, the court looked to the
application portion and concluded that: 

[B]ecause the facts,
as applied to the law in the application paragraph, pointed the jury to the
appropriate portion of the definitions, no harm resulted from the court’s
failure to limit the definitions of culpable mental states to result and
circumstances of conduct.  

 

Hughes, 897 S.W.2d at 295-96.  Because error had been preserved, the court was
reviewing the charge for “some” harm under Almanza.  Id.
at 296.  Here, as in Hughes, the trial court properly limited the definition of
recklessness in the application paragraph. 
The application paragraph provided that the jury was to adjudicate Appellant
as delinquent only if he “intentionally, knowingly or recklessly cause[d]
bodily injury to [I.M.] . . . .”  Thus,
although the jury was provided a definition that recklessness can also occur
with regard to the circumstances of the conduct, the jury was also instructed
that it could only adjudicate Appellant guilty if he was reckless with respect
to the result of his conduct.  Certainly,
if the trial court’s failure to limit the definition of recklessness in the
abstract portion of the charge when it is properly limited elsewhere does not
rise to the level of “some harm” then it most definitely does not rise to the
level of egregious harm.  See Hughes, 897 S.W.2d at 296; Collins v. State, No. 09-04-407-CR, 2005
WL 3074154, at *6-7 (Tex.App.--Beaumont Nov. 16, 2005, no pet.); see also, Medina v. State, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999)(stating
that where the application paragraph in a charge correctly instructs the jury,
an error in the abstract paragraph is not egregious).  

            However, out of an abundance of
caution, and in light of Dougherty v.
State, No. PD-1411-05, 2006 WL 475802, at *1 (Tex.Crim.App. Mar. 1, 2006)(per curiam)(not designated for
publication), we will continue our harm analysis to include consideration of
all four Almanza factors.[6]  See
Almanza, 686 S.W.2d at 171. 

            The second factor we must consider
is the state of the evidence.  See Almanza, 686 S.W.2d at 171.  The State’s evidence appropriately focused on
the result of Appellant’s conduct.  The
State’s questioning revolved around the nature and degree of I.M.’s injury and
Appellant’s participation in the actual act of pushing I.M. into the trash can.  The fact that Appellant purposefully picked
up I.M. and forced him head first into the trash can (more than once) is
appropriate evidence for the State to present in order to meet its burden of
proof.  Likewise, as to the third Almanza factor, the State’s argument
focused on Appellant’s mental state in causing the result of his conduct,
rather than on the nature of his conduct. 
See Almanza, 686 S.W2d at 171.  Finally, we look to “any other relevant
information.”  See Almanza, 686 S.W2d at 171. 
Once again we find nothing supporting Appellant’s contention of
egregious harm. 

            After analyzing the error in light
of all four Almanza factors, we
conclude that Appellant has not suffered egregious harm.  We overrule Issue One. 




 

Legal
Sufficiency

            In Issue Two Appellant, challenges the
legal sufficiency of the evidence to support the adjudication and subsequent
disposition.  

Standard
of Review

            Although juvenile appeals are categorized
as civil proceedings, we use the same standards applicable in criminal appeals
when reviewing the sufficiency of the evidence to support a finding that a
juvenile engaged in delinquent conduct.  See In the Matter of D.R.T., 339 S.W.3d
208, 210 (Tex.App.--El Paso 2011, no pet.); In
re H.G.G.D., 310 S.W.3d 43, 45 (Tex.App.--El  Paso 2010, no pet.); In the Matter of M.D.T., 153 S.W.3d 285,
287 (Tex.App.--El  Paso 2004, no pet.). 
Accordingly, in analyzing Appellant’s legal sufficiency challenge, we
review the evidence in the light most favorable to the verdict and determine
whether “any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.”  See Brooks v. State, 323 S.W.3d 893, 895
(Tex.Crim.App. 2010)(holding that the Jackson
legal-sufficiency standard is the only standard a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt);
see also Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re D.R.T., 339 S.W.3d at 209-10. 


            As a reviewing court, we do not
resolve any conflict of fact, or re-evaluate the weight of any evidence or
credibility of any witnesses.  King v. State, 29 S.W.3d 556, 562
(Tex.Crim.App. 2000); In re H.G.G.D.,
310 S.W.3d at 46, citing Adelman v. State,
828 S.W.2d 418, 422 (Tex.Crim.App. 1992). 
Instead, our duty is to determine whether both the explicit and implicit
findings of the jury are rational by viewing all of the evidence admitted at
trial in a light most favorable to the verdict.  Adelman,
828 S.W.2d at 422.  If the record
supports conflicting inferences, we presume that the fact finder resolved any
inconsistencies in favor of the verdict, and we defer to that determination.  Clayton
v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000); Matson v. State. 819 S.W.2d 839, 843
(Tex.Crim.App. 1991).  This standard is
applicable for both direct and circumstantial evidence cases.  Geesa v.
State, 820 S.W.2d 154, 158 (Tex.Crim.App. 1991), overruled on other grounds, Paulson v. State, 28 S.W.3d 570
(Tex.Crim.App. 2000).

            In addition, we determine the
sufficiency of the evidence based on a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); Thomas v. State, 303 S.W.3d 331, 333 (Tex.App.--El Paso 2009, no
pet.).  A correct jury charge is one that
(1) accurately sets out the law; (2) is authorized by the indictment; (3) does
not unnecessarily restrict the State’s theories of liability; and (4) adequately
describes the particular offense for which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex.Crim.App. 2001); Malik, 953 S.W.2d at 240; Thomas,
303 S.W.3d at 333.  The hypothetically
correct jury charge, as applicable to the offense of assault causing bodily
injury, would state whether Appellant intentionally, knowingly, or recklessly
caused bodily injury to the victim.  See Tex.Penal
Code Ann. § 22.01(a)(1)(West 2011).  

            Appellant was charged and adjudicated
under Section 22.01(a)(1) of the Texas Penal Code which provides that a person
commits assault by intentionally, knowingly, or recklessly causing bodily
injury to another.  Tex.Penal Code Ann. § 22.01(a)(1).  Therefore, the State was required to prove
beyond a reasonable doubt that:  (1) I.M.
suffered bodily injury; and (2) that Appellant intentionally, knowingly, or
recklessly caused such a result.  See id.  Appellant does not contest
the sufficiency of the evidence to prove bodily injury.[7]  Rather, Appellant argues that the State
failed to prove that Appellant caused the bodily injury with the requisite
mental state, i.e. that Appellant
either intentionally, knowingly, or recklessly caused the resulting injury.

            A culpable mental state is almost
always proven by circumstantial evidence.  See Hernandez v. State, 819 S.W.2d 806, 810
(Tex.Crim.App. 1991); Gant v. State,
278 S.W.3d 836, 839 (Tex.App.--Houston [14th Dist.] 2009, no pet.); Pitonyak v. State, 253 S.W.3d 834, 844
(Tex.App.--Austin 2008, pet. ref’d).  Proof
of knowledge or intent may be inferred from both direct evidence and from
evidence of the circumstances surrounding the act.  See
Brown v. State, 122 S.W.3d 794, 800 (Tex.Crim.App. 2003), cert. denied, 541 U.S. 938, 124 S.Ct.
1678, 158 L.Ed.2d 359 (2004); Wolfe v.
State, 917 S.W.2d 270, 275 (Tex.Crim.App. 1996).  Further, in determining culpability for an
offense, a jury may consider events occurring before, during, and after the
offense.  See Beltran v. State, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980); Patrick v. State, 906 S.W.2d 481, 487
(Tex.Crim.App. 1995); Pitonyak, 253
S.W.3d at 844; Ramirez v. State, 229
S.W.3d 725, 729 (Tex.App.--San Antonio 2007, no pet.).  A jury may infer intent from the acts, words,
and conduct of the accused, as well as from the extent of the injuries and the
relative size and strength of the parties. 
Lindsey v. State, 501 S.W.2d
647, 648 (Tex.Crim.App. 1973); Patrick,
906 S.W.2d at 487.  In other words, a jury
can infer knowledge or intent from the acts, conduct, and remarks of the
accused and from the surrounding circumstances.  Gant,
278 S.W.3d at 839.

            Appellant testified that he
purposefully picked up I.M. and pushed him head first into a trash can.  By his own admission, Appellant intended the
conduct.  As we have noted, however,
assault is a result of conduct offense.  Dolkart v. State, 197 S.W.3d 887, 893
(Tex.App.--Dallas 2006, pet. ref’d); Ford
v. State, 38 S.W.3d 836, 844-45 (Tex.App.--Houston [14th Dist.] 2001, pet.
ref’d).  As such, the essential focus of
the statute is to punish the defendant for causing the specified result--the bodily
injury.  Dolkart, 197 S.W. 3d at 893; see
also Brooks v. State, 967 S.W.2d 946, 948-49 (Tex.App.--Austin 1998, no
pet.)(stating that to be guilty of assault by bodily injury, one must intend
the result of the conduct, not just the conduct itself).  That said, “Texas law, like that of all
American jurisdictions, presumes that a criminal defendant is sane and that he
intends the natural consequences of his acts.” 
Ruffin v. State, 270 S.W.3d
586, 591-92 (Tex.Crim.App. 2008).  Here,
Appellant not only acknowledged that he purposefully put I.M. into the trash
can, but that he did so more than once.

            While there was testimony that I.M.
was playing around with the other boys, I.M. himself testified that he was not
playing and that he was crying throughout the entire incident.  There was also evidence that I.M. was
struggling and that the boys were laughing at him.  Appellant testified that I.M. was smaller
than the others and that they threw him into the trash can because he was
little.  

            And according to the testimony of
I.M. and Montoya, when given the opportunity to apologize, Appellant did so by
using curse words.  The jury is the sole
judge of witness testimony and the weight to give such testimony.  As fact finder, the jury was free to believe
or disbelieve any or all of any witness testimony, and in conducting our review
we presume that the jury resolved any conflicts in the evidence in favor of the
verdict.  See Brown v. State, 122 S.W.3d 794, 800 (Tex.Crim.App. 2003); Moreno v. State, 702 S.W.2d 636, 641
(Tex.Crim.App. 1986); Moore v. State,
54 S.W.3d 529, 539 (Tex.App.--Fort Worth 2001, pet. ref’d)(cases recognizing that
intent is a question of fact and, therefore, within the sole purview of the
jury).

            Viewing the evidence in the light
most favorable to the verdict, we find a rational jury could have reasonably
inferred from Appellant’s acts, conduct, and remarks and from the surrounding
circumstances that he possessed the requisite culpable mental state to support
a conviction for assault causing bodily injury. 
See Jackson, 443 U.S. at 319,
99 S.Ct. at 2789; Clayton, 235 S.W.3d
at 778. Accordingly, we hold that the evidence is legally sufficient to support
Appellant’s conviction.  We overrule Issue
Two and affirm the trial court’s judgment.

 

 

August 8, 2012                                   ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.











[1]  Initially we note that I.M. was charged with
a criminal offense.  Therefore, it is
within this context that we review whether the juvenile court erred in
submitting the jury charge.  See e.g. In the Matter of D.C.S., No.
10-03-00393-CV, 2004 WL 2406763, at *1 (Tex.App.--Waco Oct. 27, 2004, no pet.)(mem.
op.)(not designated for publication)(“Evaluating the substance of a criminal
jury charge under the body of law to review a civil jury charge does not work.”)





[2]  The standard of analyzing harm from a charge
error in a criminal setting was set out in Almanza
v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). 





[3]  Among others, the following courts have
applied the Almanza, criminal harm
analysis to jury charge error in a juvenile delinquency proceeding: In re A.C., 2011 WL 3925516, at *6; In the Matter of A.E.B., 255 S.W.3d 338,
350 (Tex.App.--Dallas 2008, pet. dism’d)(jury charge error, which was subject
to a timely objection was analyzed for harm using the Almanza standard); In re E.F.,
986 S.W.2d 806, 808-09, 810 (Tex.App.--Austin 1999, pet. denied)(same).  In re K.W.G.,
953 S.W.2d at 488 (applying Almanza
to alleged unpreserved charge error).

 





[4]  During the
charge conference, Appellant objected to the definitions of “intentionally” and
“knowingly” as defined in the abstract portion of the jury charge.  The trial court sustained Appellant’s
objections and adjusted the definitions of “intentionally” and “knowingly”
accordingly.  However, Appellant did not
object to the definition of “reckless” at any point during the charge
conference.  Likewise, a review of the
remainder of the record reveals no such objection either orally or in writing.

 





[5]  We note that Rule 33.1 applies to both
criminal and civil cases, since Appellant did not make any objection at trial,
he failed to preserve error under either the criminal or civil rules. 





[6]  In Dougherty,
a per curium, unpublished opinion issued after Hughes and Patrick, the Court
of Criminal Appeals held that an appellate court improperly limited its harm
analysis when it determined that the abstract portion of the charge did not
cause egregious harm because the application paragraph was correct without
consideration of the remaining Almanza factors.  See
Dougherty v. State, No. PD-1411-05, 2006 WL 475802, at *1.





[7]  Although Appellant does not specifically
challenge the sufficiency of the evidence to prove that Appellant inflicted
bodily injury, we note that the evidence was in fact sufficient to prove this
element beyond a reasonable doubt.

 

Bodily
injury is defined as “physical pain, illness, or any impairment of physical
condition,” and is proven by evidence that the victim suffered “some”
pain.  Tex.Penal
Code Ann. § 1.07(a)(8); Lane v.
State, 763 S.W.2d 785, 786-87 (Tex.Crim.App. 1989).  A jury may use their common sense and apply
their common knowledge, observations, and experience to draw reasonable
inferences about whether or not an act results in pain.  Id.  Consequently, the victim of an assault need
not expressly testify that he suffered pain at the hands of the accused before
the jury can reasonably infer the existence of pain.  Id. 

 

                Here, there
was testimony from several witnesses testified that that I.M. had red marks and
swelling, was in pain and was crying as a result of the incident.  The State also entered photographs of I.M.’s injuries
into evidence, which were consistent with the physical altercation.  Accordingly, based on the jury’s common
understanding of pain, it could infer I.M. suffered “physical pain” as a result
of the incident.  Randolph v. State, 152
S.W.3d  764, 774 (Tex.App.--Dallas 2004,
no pet.).