COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-07-00078-CV |
| | § | |
| IN THE MATTER OF E.F.Z.R., A JUVENILE. | § | Appeal from the |
| | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 0700147) |
| | § | |

**O P I N I O N**

This is an appeal from a judgment and order of commitment committing the juvenile, E.F.Z.R., to the Texas Youth Commission (TYC).

**I.  SUMMARY OF THE EVIDENCE**

On February 15, 2007, the State filed its Petition Based on Delinquent Conduct which alleged that the juvenile, E.F.Z.R., engaged in delinquent conduct by committing the offense of possession of cocaine in the amount of 400 grams or more.  E.F.Z.R. waived his right to a hearing  before the Judge of the designated Juvenile Court and agreed to a hearing before the Juvenile Court Referee. He also waived a jury.  E.F.Z.R. and his attorney both signed a form stipulating to the evidence and admitting to the allegations contained in the petition.  An Order of Adjudication was signed by the Juvenile Court Referee on February 20, 2007.

Juvenile Probation Officer Linda Acevedo filed a Pre-Disposition Report recommending E.F.Z.R. be committed to the TYC.  A disposition hearing was held on March 14, 2007.  At the close of the hearing, the Juvenile Court Referee committed E.F.Z.R. to the TYC.  A Judgment of

Commitment and an Order of Commitment were signed by the Juvenile Court Referee on the same day and by Judge Alfredo Chavez of the 65th District Court of El Paso County, a Juvenile Court, on March 20, 2007.

At the disposition hearing, Acevedo testified that she was a juvenile probation officer for the El Paso County Juvenile Probation Department. She testified that the existent one was the juvenile's sole adjudication. She prepared the Pre-Disposition Report regarding E.F.Z.R., which was admitted into evidence.[1] Acevedo testified that the juvenile was a citizen of Mexico, and he was in the country illegally. He had no problems with alcohol or drugs. She recommended that E.F.Z.R. be committed to the TYC, because, due to his non-citizen status, there was no other placement available for him. E.F.Z.R.'s parents did not agree with the recommendation. The juvenile had been absent from school for two years, and his parents tried to get him back into school, but he refused to go. Acevedo testified that the parents had not contributed to his delinquency. She stated that her recommendation was in the best interests of the juvenile, as well as the community.

During cross-examination, Acevedo stated that it was possible that some juveniles who were in the country illegally were on probation. She stated that E.F.Z.R.'s mother worked at a business called Fun For Kidz in Cd. Juárez, Chih., and that her son had worked for the same employer for four years. Acevedo testified that the parents do not live together. The father had been to all hearings of which he had notice. The witness stated that the juvenile had expressed remorse for his actions. She did not obtain a psychological evaluation of him.

---

[1] This report indicated that on February 11, 2007, E.F.Z.R. drove a vehicle across the Ysleta Port of Entry into the United States. The vehicle contained approximately 23.35 pounds of cocaine. The evaluation portion of the report stated that the juvenile was residing with his mother and was not following her rules. She was losing control of the juvenile as he was becoming more rebellious and verbally aggressive towards her. He was associating with "negative peers" of which his mother disapproved, and he continued to do so. He was smoking cigarettes and had not attended school for two years. The report stated that, because the juvenile is a foreign national, he was ineligible for services through the Juvenile Probation Department. The recommendation in the report was that the juvenile be committed to the care, custody, and control of the TYC.

On redirect examination, Acevedo clarified that the juveniles who are in the country illegally and are on probation are living with their parents, who live in the United States. She was not aware of any juveniles who are on probation that live in Cd. Juárez. Acevedo stated that the Juvenile Probation Department cannot supervise juveniles living in Cd. Juárez. She agreed that juveniles are sometimes placed with relatives, but that E.F.Z.R. had no relatives living in the United States. She testified that she had asked both the mother and the father whether E.F.Z.R. had any relatives living in the United States.

The defense called E.F.Z.R.'s mother to the stand. She testified that she and her son live together. Her other children are married and do not live with her. E.F.Z.R.'s mother testified that she had tried to keep her son in school, but there was difficulty with the testing procedures. She was aware that her son did not want to go to school. The mother stated that there was a period when her son was slightly rebellious, but she denied that he was ever aggressive towards her. She testified that her son did not like to do chores around the house and that she disapproved of one of his friends. He was older than her son, and she thought he was using drugs. She stated that her son had been a very good child, although her relationship with him had been strained recently. They had always been close and were best friends.

E.F.Z.R.'s father testified on his son's behalf. He stated that he had an uncle who lived in Socorro, a suburb of El Paso located in El Paso County. He had spoken to his uncle, who was willing to keep E.F.Z.R. The father did not know his uncle's address, but he knew where he lived. He stated that the Juvenile Probation Department had never asked him whether he had any relatives living in El Paso. The father testified that he had left the family when E.F.Z.R. was three years old. He saw his son about every three months. His uncle had met the juvenile three or four months ago at an aunt's house in Cd. Juárez, for about thirty minutes. The uncle had also met the juvenile ten

years before. The uncle was not present in the courtroom.

At the close of the evidence, the Juvenile Court Referee stated that she was going to find the juvenile was eligible for the TYC, because he had committed a first-degree felony. She stated that E.F.Z.R. was in need of rehabilitation and that the protection of the juvenile and the public required that he be committed to the care, custody, and control of the TYC.

## II. DISCUSSION

In E.F.Z.R.'s sole issue, he maintains that the court abused its discretion by committing him to the TYC, when an alternative was available. Specifically, E.F.Z.R. contends that the court should have continued the disposition hearing until further evidence could be obtained concerning the suitability of a placement with the uncle in lieu of committing him to the TYC. The juvenile also argues that there was no evidence presented that he was a danger to society and that the community needed to be protected from him, as the Juvenile Court found in its Judgment of Commitment.

After a juvenile has been adjudged to have engaged in delinquent conduct, the juvenile court has broad discretion to determine a suitable disposition. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.--Fort Worth 2002, no pet.). We will not reverse the juvenile court's findings regarding disposition, absent a clear abuse of discretion. *Id.* In conducting this review, we engage in a two-pronged analysis: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *In re M.A.C.*, 999 S.W.2d 442, 446 (Tex. App.--El Paso 1999, no pet.).

The traditional sufficiency of the evidence standards of review come into play when considering the first question. *Id.* We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision or whether it was arbitrary and unreasonable. *Id.* To determine whether a trial court abused its discretion, we must decide whether the court acted

without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.--Fort Worth 2003, no pet.). Merely because a trial court has decided a matter within its discretionary authority in a manner different from how an appellate court would have ruled in a similar circumstance does not demonstrate an abuse of discretion. *Sotelo v. Gonzales*, 170 S.W.3d 783, 788 (Tex. App.--El Paso 2005, no pet.). An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *In re B.N.F.*, 120 S.W.3d at 877. Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Sotelo*, 170 S.W.3d at 788.

A juvenile court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge. *In re A.S.*, 954 S.W.2d 855, 861 (Tex. App.--El Paso 1997, no pet.).

In considering a "no evidence" legal sufficiency issue, we consider only the evidence and inferences that tend to support the challenged finding and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992). If any probative evidence supports the finding, it must be upheld. *Sotelo*, 170 S.W.3d at 787.

Factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. *Id.* In reviewing an issue asserting that a finding is factually insufficient -- i.e., that it is against the great weight and preponderance of the evidence -- we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. *Id.* It is for the fact finder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Id.*

For us to reverse, we must conclude that the trial court's finding is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. *Id.*

The juvenile court's exercise of discretion in making an appropriate disposition is guided by the requirements of section 54.04 of the Family Code. *In re A.S.*, 954 S.W.2d at 861. Section 54.04(c) provides that no disposition may be made under the section, unless the child is in need of rehabilitation or the protection of the public or of the child requires that disposition be made. TEX. FAM. CODE ANN. § 54.04(c). Further, the trial court may not make a disposition placing a juvenile on probation outside of his home, unless the court finds that the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. *Id.*

Further, to commit a juvenile to the TYC, the trial court must find and include in its disposition order its determination that (A) it is in the child's best interests to be placed outside his home, (B) reasonable efforts were made to prevent or eliminate the need for his removal from the home and to make it possible for the child to return to his home, and (C) the child cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i)(1)(A)-(C). Here, the trial court made the mandatory findings in its disposition order.[2]

---

[2] TEX. FAM. CODE ANN. § 54.04(f) provides that the court shall specifically state in its disposition order its reasons for the disposition. In that light, the court also found that:

1. This disposition is necessary as the juvenile is an [sic] Foreign National and the Court has no other alternatives other than institutionalization, as the juvenile cannot be placed on probation, as probation officers cannot supervise juveniles in Mexico.

2. The juvenile is in need of rehabilitation and the only services available to the Court that can be provided to the juvenile are located within State institutions and therefore, the juvenile needs to be committed to the care, custody, and control of the Texas Youth Commission.

3. The juvenile has no parent(s), guardian(s) or custodian(s), [who] is/are providing suitable supervision and by using this particular disposition, the juvenile can constantly be monitored and

E.F.Z.R. argues that the evidence indicated that the Juvenile Probation Officer had not investigated any alternatives to committing him to TYC. He maintains that, once his father indicated that the uncle would take him in, the court should have continued the disposition hearing until the matter could be developed. Regarding that last contention, we note that E.F.Z.R did not move for a continuance. Notwithstanding that, E.F.Z.R. maintains that the court should have continued the disposition hearing, because the matter of the uncle's availability to care for him was unresolved. The juvenile cites no authority for the proposition that the court had a duty to continue the hearing, and we know of none. *See In re J.M.L.,* No. 08-06-00015-CV, ___ S.W.3d ____, 2007 WL 3120814, at *5 (Tex. App.--El Paso Oct. 25, 2007, no pet.) (not yet published). Further, the uncle was not present in court. The evidence was conflicting on whether either parent had mentioned the uncle before, and the father's testimony, even if taken as true, indicated that the uncle had had almost no prior involvement with E.F.Z.R. Under the above-mentioned standards, the court could reasonably have determined that there was no alternative to removing the juvenile from the home, given the inability of the probation authorities to supervise him.

E.F.Z.R. also argues that there was no evidence to support the court's finding that "[t]he pubic [sic] safety requires that this disposition be made and that the juvenile be removed from the El Paso Community . . . ." The juvenile maintains that the crime he committed was not a violent offense, and he points to his mother's testimony that he was "a very good child." She also stated that, even though matters had been strained between them for several weeks, they had always been

receive services in order to modify his/her behavior.

4.      The pubic [sic] safety requires that this disposition be made and that the juvenile be removed from the El Paso Community and institutionalized as he/she poses a high risk to the community.

5.      This disposition will hold the juvenile responsible and accountable for his/her behavior and consequences can be imposed for his/her delinquent behavior in the community.

close and were best friends.  Again, the evidence was conflicting, in that the Pre-Disposition Report indicated that the juvenile was residing with his mother and was not following her rules. Furthermore, she was losing control of him as he was becoming more rebellious and verbally aggressive towards her.  He was associating with "negative peers" of whom his mother disapproved, and he continued to do so.  He had not attended school for two years.  However, even if the evidence supporting the finding is weak, section 54.04(c) states in the disjunctive that a disposition can be made, if the court finds that the juvenile is in need of rehabilitation or the protection of the public or of the child requires that a disposition be made.  TEX. FAM. CODE ANN. § 54.04(c).  Therefore, as the court found that the child was in need of rehabilitation, it is irrelevant whether the protection of the child or the public required a disposition.  *See In re S.A.M.*, 933 S.W.2d 744, 745 (Tex. App.-- San Antonio 1996, no pet.).  Accordingly, E.F.Z.R.'s sole issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.

KENNETH R. CARR, Justice

March 13, 2008

Before Chew, C.J., McClure, and Carr, JJ.