

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

**OPINION ON MOTION FOR REHEARING**

No. 04-24-00795-CV

**IN THE MATTER OF J.C.**, a juvenile

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2024JUV00810
Honorable Jacqueline Herr-Valdez, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:    Irene Rios, Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice

Delivered and Filed: February 4, 2026

AFFIRMED

On November 19, 2025, we issued an opinion and judgment affirming the trial court's judgment. On December 18, 2025, counsel for appellant, J.C.[1], timely filed a motion for rehearing, and we requested a response from appellee, the State. After considering the motion and response filed, we grant appellant's motion for rehearing, withdraw our prior opinion and judgment, and substitute this opinion and judgment in its stead.

---

[1] To protect the identity of appellant, who is a minor, we refer to him by his initials. *See* TEX. R. APP. P. 9.8(c); TEX. FAM. CODE § 56.01.

J.C. challenges the juvenile court's order of adjudication finding he engaged in delinquent conduct and the order of disposition committing him to the Texas Juvenile Justice Department for a ten-year term. He argues (1) the evidence was factually insufficient to adjudicate him guilty of aggravated robbery and aggravated assault with a deadly weapon, (2) the juvenile court violated his double jeopardy rights, and (3) the juvenile court committed jury charge error. Based upon our review of the law and the record, we affirm the trial court's judgment.

## BACKGROUND

Annelise Ramirez was confronted by a male with a handgun as she sat in her car outside of North Star Mall in San Antonio, Texas. When she refused to exit her vehicle, the male—now joined by others—opened her door, whereupon Ramirez offered gas money and cash transfers. Eventually, the perpetrators returned to their vehicle and, as they drove off, the male who originally confronted her shot three times in the direction of Ramirez's car, with the third shot hitting her right forearm near the elbow. Ramirez chased them to get their license plate number and then stopped to seek medical assistance. The San Antonio Police Department (SAPD) secured surveillance footage from the parking garage identifying the vehicle, secured J.C.'s fingerprints from that vehicle, and had Ramirez positively identify J.C. as the perpetrator based on a blind photo array.

The State filed a petition seeking a determinate sentence, alleging J.C. engaged in delinquent conduct by committing (1) aggravated robbery in violation of Section 29.02 of the Texas Penal Code, and (2) aggravated assault with a deadly weapon in violation of section 22.02 of the Texas Penal Code. TEX. PEN. CODE §§ 29.02(a)(2); 29.03(a)(2). J.C. pled not true to both counts. After a two-day trial, a jury found J.C. engaged in the alleged delinquent conduct. The juvenile court signed an order of adjudication and committed him to the Texas Juvenile Justice

Department for a term of ten years with a possible transfer to the Texas Department of Criminal Justice. J.C. now appeals.

## SUFFICIENCY OF THE EVIDENCE

First, J.C. argues the State's identity evidence against him was factually insufficient to support the jury's verdict. J.C. specifically contends (1) Ramirez's identification of him as her assailant, including the State's use of a blind photo array, was insufficient to identify him and (2) neither J.C.'s fingerprints nor his DNA were ever found on the Camaro or inside the Audi.

### A. Sufficiency of the Evidence Challenges in Juvenile Delinquency Cases

In 2010, the Court of Criminal Appeals recognized "[t]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *see Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015) (recognizing *Brooks* abolished factual-sufficiency review in criminal convictions). Since *Brooks*, we have repeatedly rejected factual sufficiency challenges in juvenile delinquency proceedings, applying a legal sufficiency standard instead. *See, e.g.*, *In re J.V.*, No. 04-12-00707-CV, 2013 WL 2145779, at *1 (Tex. App.—San Antonio May 15, 2013, no pet.) (mem. op.) (argued both legal and factual sufficiency and applying legal sufficiency only); *In re T.N.H.*, No. 04-12-00123-CV, 2013 WL 979123, at *4 (Tex. App.—San Antonio Mar. 13, 2013, no pet.) (mem. op.) (rejecting factual sufficiency challenge and addressing it as legal sufficiency challenge instead); *In re H.T.S.*, No. 04-11-00847-CV, 2012 WL 6743562, at *8 (Tex. App.—San Antonio Dec. 31, 2012, pet. denied)

(mem. op.) (same).[2] As we explained in those cases, juvenile delinquency cases are "quasi-criminal" in nature, and we therefore use the same standards applicable in criminal appeals when reviewing challenges to the sufficiency of the evidence. *See H.T.S.*, 2012 WL 6743562, at *8.

**B. Does *Stoddard* Resurrect Factual Sufficiency in Juvenile Cases?**

J.C. contends we should review the evidence for factual sufficiency by applying the standard set forth in *In re Commitment of Stoddard*. 619 S.W.3d 665, 671 (Tex. 2020). The State contends we should follow our prior precedent concluding there is no factual sufficiency review for evidentiary sufficiency challenges in the juvenile delinquency context, and the only standard is legal sufficiency, citing our prior precedent. We agree.

In *Stoddard*, Jeffery Lee Stoddard pled guilty to aggravated sexual assault of a child and possession of child pornography and was sentenced to twenty years in prison for each sexual-assault conviction and ten years for the child-pornography conviction, to be served concurrently. *Stoddard*, 619 S.W.3d at 670. Before he was scheduled to be released on parole, the State filed a petition alleging he was a sexually violent predator (SVP) pursuant to Health and Safety Code chapter 841 and should be committed for treatment and supervision pursuant to the SVP Act. *See id.* A jury unanimously found beyond a reasonable doubt that he was a sexually violent predator, and the trial court ordered him civilly committed under the Act for treatment and supervision by the Civil Commitment Office. *See* TEX. HEALTH & SAFETY CODE §§ 841.007, 841.081(a), 841.062(a); *Stoddard*, 619 S.W.3d at 672.

---

[2] This is consistent with other courts of appeal. *See, e.g.*, *In re W.A.M.P.*, No. 14-21-00105-CV, 2022 WL 2976876, at *3 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet.) (mem. op.); *In re A.G.*, No. 01-18-01092-CV, 2020 WL 4006449, at *2 (Tex. App.—Houston [1st Dist.] July 16, 2020, pet. denied) (mem. op.); *In re C.Z.S.*, No. 09-14-00480-CV, 2015 WL 3407250, at *1–2 (Tex. App.—Beaumont May 28, 2015, pet. denied) (mem. op.); *In re M.W.*, 513 S.W.3d 9, 11 (Tex. App.—Tyler 2015, pet. denied); *In re C.N.*, No. 02-11-00394-CV, 2013 WL 826353, at *1 (Tex. App.—Fort Worth Mar. 7, 2013, no pet.) (mem. op.); *In re L.J.S.*, No. 11-11-00253-CV, 2012 WL 1365961, at *2 (Tex. App.—Eastland Apr. 19, 2012, no pet.) (mem. op.); *In re A.O.*, 342 S.W.3d 236, 239–40 (Tex. App.—Amarillo 2011, pet. denied); *In re D.R.T.*, 339 S.W.3d 208, 209–10 (Tex. App.—El Paso 2011, no pet.).

Stoddard appealed, contending the evidence was legally *and* factually insufficient to support the jury's verdict. *Stoddard*, 619 S.W.3d at 672. The Fort Worth Court of Appeals found the evidence against Stoddard factually insufficient. *Id.* at 673. The State petitioned for review arguing (1) the trial court erred by conducting a factual sufficiency review at all in an SVP case because the Court of Criminal Appeals abolished a factual-sufficiency review in criminal cases, and, in the alternative, (2) the actual sufficiency review conducted by the Fort Worth Court of Appeals was improper. *Id.*

The Supreme Court rejected the State's argument that factual sufficiency should be dispensed with. It acknowledged that both legal and factual sufficiency review in cases involving the SVP Act require the court of appeals to avoid ignoring undisputed facts that do not support the finding and presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. *Id.* at 676. It also explained, however, that disputed evidence a factfinder could not have credited in favor of the finding is treated differently. *Id.* (explaining in legal sufficiency challenge, court of appeals disregards such evidence in determining whether rational factfinder could find statutory SVP elements beyond reasonable doubt and in factual sufficiency challenge court considers whether evidence considering entire record is so significant that factfinder could not have determined beyond reasonable doubt statutory elements met). It acknowledged the distinction may be "fine" in certain cases but no less valuable, and courts of appeal must continue to consider challenges to the factual sufficiency of the evidence in SVP cases.

As to the State's second argument, the Texas Supreme Court found it notable that an SVP Act commitment proceeding was an "unusual civil case" incorporating a burden of proof of "beyond a reasonable doubt" usually limited to criminal cases. *Id.* at 674. It observed it had never considered the effect of a beyond a reasonable doubt burden of proof at trial on the standard for

conducting a factual sufficiency review. *Id.* But it explained that it had previously recognized that a review for factual sufficiency of the evidence must recognize that the burden of proof *at trial* affects the review of the evidence *on appeal*. *See id.* at 674 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). It emphasized, however, that the jury was the sole judge of the credibility of witnesses and the weight to be given to their testimony. *See id.* (quoting *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). The Court then explained the standard thusly:

> in an SVP case where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met.

*Id.* at 675.

*Stoddard* presents a compelling argument for employing a factual sufficiency standard of review incorporating the beyond a reasonable doubt burden of proof where an appellate court is reviewing the evidence for factual sufficiency involving such a high burden of proof. Nevertheless, unlike here, there was *never* a dispute between the Fort Worth Court of Appeals and the Texas Supreme Court as to whether to review the evidence for factual sufficiency *at all*. There is good reason for that. Juveniles are also entitled to double jeopardy protections in juvenile delinquency proceedings. *See In re J.R.R.,* 696 S.W.2d 382, 384 (Tex. 1985); *C.Z.S.*, 2015 WL 3407250, at *1. A person civilly committed as a sexually violent predator is not. *See C.Z.S.*, 2015 WL 3407250, at *1. *See generally Kansas v. Hendricks*, 521 U.S. 346, 369–70 (1997); *In re Commitment of Fisher*, 164 S.W.3d 637, 645–46 (Tex. 2005). Moreover, J.C. does not identify a single example of a court of appeal applying the factual sufficiency standard post-*Brooks* under these circumstances; nor are we aware of any. Indeed, three months after the Texas Supreme Court issued its decision in *Stoddard*, it denied a petition for review squarely seeking factual sufficiency review where the

First Court of Appeals applied *Brooks* and rejected it. *See In re A.G.*, No. 01-18-01092-CV, 2020 WL 4006449, at *2 (Tex. App.—Houston [1st Dist.] July 16, 2020, pet. denied) (mem. op.); *see also In re H.T.S.*, No. 04-11-00847-CV, 2012 WL 6743562, at *8 (Tex. App.—San Antonio Dec. 31, 2012, pet. denied). Finally, under the doctrine of stare decisis, we are bound by our prior precedent identifying juvenile delinquency proceedings as quasi-criminal and applying *Brooks* for the proposition that the only review for sufficiency of the evidence is legal sufficiency unless and until the Texas Supreme Court decides otherwise. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (providing under stare decisis, three-judge panels must follow materially indistinguishable decisions of earlier panels of same court unless higher authority has superseded prior decision); *see also J.V.*, 2013 WL 2145779, at *1; *T.N.H.*, 2013 WL 979123, at *4; *H.T.S.*, 2012 WL 6743562, at *8.

## C. Is the Evidence Legally Sufficient?

In our previous decisions where a party has raised factual sufficiency, we have construed the issue as one of legal sufficiency and applied that standard of review in its stead. *See, e.g.*, *T.N.H.*, 2013 WL 979123, at *4; *see also J.V.*, 2013 WL 2145779, at *1; *T.N.H.*, 2013 WL 979123, at *4; *H.T.S.*, 2012 WL 6743562, at *8; *Cox v. State*, No. 04-10-00176-CR, 2011 WL 1884794, at *1 (Tex. App.—San Antonio May 18, 2011, no pet.).

Evidence is legally sufficient if, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See, e.g.*, *J.V.*, 2013 WL 2145779, at *1; *H.T.S.*, 2012 WL 6743562, at *8. *See generally Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will not disturb the jury's full responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences based on the evidence presented.

*Baltimore v. State*, 689 S.W.3d 331, 341–42 (Tex. Crim. App. 2024).[3] When determining sufficiency, we will compare the evidence presented to the essential elements of the offense as defined by a hypothetically correct jury charge. *Id.* at 341. A hypothetically correct jury charge sets forth the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and adequately describes the particular offense. *Id.*

### 1. Hypothetically Correct Jury Charge for Aggravated Robbery and Aggravated Assault

A person commits aggravated robbery in violation of Section 29.03 of the Texas Penal Code if the person (1) while in the course of unlawfully appropriating property, (2) intends to deprive the owner of property and obtain or maintain control of it, (3) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, and (4) uses or exhibits a deadly weapon. TEX. PEN. CODE §§ 29.02, 29.03(a), 31.03(a).[4] The State's original petition includes these elements. Thus, based on these statutory elements and the petition, the hypothetically correct jury charge in this case would allege J.C. (1) while in the course of unlawfully appropriating Ramirez's vehicle, (2) intended to deprive Ramirez of her vehicle and obtain or maintain control of it, (3) intentionally or knowingly threatened or placed Ramirez in fear of imminent bodily injury or death, and (4) used a handgun. *See* TEX. PEN. CODE §§ 29.02, 29.03(a), 31.03(a); *Johnson*, 509 S.W.3d at 322–23.

---

[3] Jurors are permitted to draw reasonable inferences from the evidence presented at trial, so long as each inference is supported by evidence. *Id.* They "may use common sense, common knowledge, personal experience, and observations from life when drawing those inferences." *Id.* They are not allowed, however, to come to conclusions based on speculation. *Id.*

[4] A firearm is a deadly weapon. TEX. PENAL CODE § 1.07(a)(17); *Johnson v. State*, 509 S.W.3d 320, 322–23 (Tex. Crim. App. 2017).

A person commits aggravated assault with a deadly weapon in violation of section 22.02 of the Texas Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another and exhibits a deadly weapon during the bodily injury. TEX. PEN. CODE §§ 22.01, 22.02.[5] The State's original petition includes these elements. Thus, based on these statutory elements and the charging instrument, the hypothetically correct jury charge in this case would allege J.C. intentionally, knowingly, or recklessly shot Ramirez with a handgun. *See* TEX. PEN. CODE §§ 22.01, 22.02; *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (elements of hypothetically correct jury charge in aggravated assault case).

### 2. Analysis

Here, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of aggravated robbery and aggravated assault beyond a reasonable doubt. *See J.V.*, 2013 WL 2145779, at *1; *H.T.S.*, 2012 WL 6743562, at *8.

Ramirez testified that, while she sat in her Chevy Camaro in a parking garage, she saw a red Audi park near her vehicle. She testified a male, initially wearing a camouflage facial covering, exhibited a handgun, tapped her vehicle on the driver's side, and told her to exit the Camaro so he could take it. She refused. The individual then allegedly opened her door, and she pleaded with him not to take the vehicle. After the individual was joined by a few others, Ramirez began to buy time, offering gas money and cash transfers instead of her Camaro. Eventually, the group, pressed for time, returned to the Audi. Ramirez then began to pull her vehicle out of the parking spot just before the Audi also began to pull out of its parking spot, but then she began backing her vehicle up back into her spot as the Audi attempted to maneuver around her to exit the parking garage.

---

[5] The State only has to prove the defendant had the culpable mental state for the underlying assault, not the aggravated portion. *Rodriguez v. State*, 538 S.W.3d 623, 631 (Tex. Crim. App. 2018).

She testified that at this time she was struggling with the Camaro's gears because she was "in shock" and "in fear." As the red Audi maneuvered around her vehicle, the original male identified by Ramirez shot three times in the direction of her Camaro, shooting her in the arm. Ramirez testified she got a "good" look at the face of the male after he removed his camouflage facial covering, and she witnessed him shoot her in the arm from the passenger side of the vehicle. She also positively identified him in the courtroom as her assailant.

SAPD lead detective Julissa Perez testified she was able to trace the incident to J.C. by reviewing security camera footage to identify and locate the red Audi and secure J.C.'s fingerprints from the vehicle. The State introduced the fingerprint evidence from the passenger side of the Audi and the rear driver's side frame exterior matching J.C., secured shortly after the vehicle was located. The State's fingerprint examiner testified J.C.'s fingerprints matched the fingerprints from the Audi.

Lead detective Perez used the evidence she secured from the scene to have youth services create a blind photo array that included J.C. and had a different detective with no knowledge of the case—Detective Claudia Torres—review the photo array with Ramirez. Detective Torres testified Ramirez identified J.C and began crying upon seeing his photo.

Accordingly, we overrule J.C.'s point of error.

### D. Would the Extension of *Stoddard* Make a Difference Here?

Even assuming we were required to apply a *Stoddard* factual sufficiency analysis, we would also find the evidence factually sufficient. J.C. contends the disputed evidence on identity makes the evidence supporting his delinquency factually insufficient, citing the lack of DNA and fingerprint evidence, the unclear surveillance footage, and Ramirez's inconsistent description of J.C. But any disputed identity evidence, in light of the entire record, mindful the jury is the sole

judge of witness credibility and weight to be given to testimony, is not so significant that the jury could not have found beyond a reasonable doubt J.C. was the perpetrator of both acts of delinquent conduct. *See Stoddard*, 619 S.W.3d at 674.

On the one hand, none of the DNA samples secured by the State from the Camaro was of sufficient quantity or quality to make it suitable for comparison. Moreover, the State introduced evidence of six separate prints taken from the Camaro driver-side door, but only one of the print cards included usable fingerprints. Those prints did not match J.C.'s fingerprints despite Ramirez's testimony he opened her driver door.[6] But the State also introduced fingerprints evidence from the passenger side of the vehicle and the rear driver's side frame exterior matching J.C. The State's fingerprint examiner testified she also processed J.C.'s fingerprints the same day she testified and again confirmed his fingerprints matched the Audi fingerprints.

Ramirez's eyewitness testimony was much stronger. Ramirez testified she saw the Audi park near her vehicle. She testified a male, initially wearing a camouflage facial covering, approached her vehicle. Ramirez testified she got a "good" look at J.C.'s face after he removed his camouflage facial covering, and she witnessed him shoot her in the arm. She also positively identified him in the courtroom as her assailant. J.C. contends the video undermines Ramirez's testimony because it does not show a camouflage face mask. The video evidence, which is shot from a great distance, does not show clearly the faces of *any* of the individuals. Ramirez also testified J.C. was an African-American male wearing an Under Armor shirt, black or charcoal gray pants, and "an inch-and-a-half of a fro." Ramirez's statements while being treated for the arm wound are inconsistent with her testimony, providing J.C. wore a black shirt and jeans and that a different, shorter African-American adolescent was wearing a camouflage mask. The video

---

[6] Nor was J.C. positively identified from surveillance footage.

evidence is also unclear as to this description, but it shows a tall individual with lighter-colored pants and a hoodie (but it's not clear if there is a shirt underneath). Nevertheless, the jury was entitled to credit and give great weight to Ramirez's identification testimony that she got a good look at J.C.'s face, she witnessed him shoot her in the arm, and she positively identified him in the courtroom as her assailant. *See Stoddard*, 619 S.W.3d at 674; *Golden Eagle Archery*, 116 S.W.3d at 761.

Ramirez also identified J.C. from a blind photo array. Ramirez testified she could not recall how many times she did a photo lineup, figuring somewhere between two and four times. She conceded she could not identify anyone in at least one of the lineups. But she did identify J.C. in at least one of the lineups. State's Exhibit 71 confirms the positive identification, providing Ramirez identified J.C. based on his bushy eyebrows, "skin tone, shadowing of face, [and] ear perked out more than the other one." Both Detectives Perez and Torres testified Ramirez identified J.C. as the perpetrator in one of the two blind photo arrays, and Detective Torres further testified Ramirez stated "no" to all of the individuals in the other photo array.

Moreover, reviewing the remainder of the evidence in light of the entire record, and mindful the jury is the sole judge of witness credibility and weight to be given to testimony, the disputed evidence that a reasonable factfinder could not have credited in favor of aggravated robbery and aggravated assault with a deadly weapon, along with undisputed evidence that does not support that delinquent conduct, are not so significant that the jury could not have found beyond a reasonable doubt that the statutory elements were met for both acts of delinquent conduct. *See Stoddard*, 619 S.W.3d at 674; *Golden Eagle Archery*, 116 S.W.3d at 761.

**DOUBLE JEOPARDY**

Second, J.C. contends the trial court's disposition order punished him twice for the same offense, violating his rights under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. The Double Jeopardy Clause protects against: (1) a second or successive petition alleging delinquent conduct for the same delinquent conduct on which there was a previous finding of delinquency or no delinquency; and (2) multiple commitments for a determinate term for delinquency to the Texas Juvenile Justice Department. *See Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023).

A juvenile's double jeopardy challenge may be raised for the first time on appeal if it is "clearly apparent" from the face of the record and enforcement of the usual rules of procedural default serves no legitimate state interest. *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023); *see, e.g.*, *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).[7] Double jeopardy is a legal issue which we review de novo if its resolution requires an application of the law to the facts and does not involve credibility and demeanor determinations. *Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023).

J.C. specifically challenges that, by the trial court's order, he was the subject of multiple commitments for the same offense. *See Sledge*, 666 S.W.3d at 599; *Ex parte Estevez*, 713 S.W.3d 913, 918 (Tex. Crim. App. 2025) (providing double jeopardy protection prevents both successive punishment and successive prosecution for same offense). A multiple-commitments violation may arise either (1) in the context of lesser-included offenses, where the same conduct is punished under a greater and a lesser-included offense, or (2) when the same conduct is punished under two

---

[7] *See also In re J.R.R.*, 696 S.W.2d 382, 384 (Tex. 1985); *State v. C.J.F.*, 183 S.W.3d 841, 848 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Matter of S.G., Jr.*, 935 S.W.2d 919, 923 (Tex. App.—San Antonio 1996, writ dism'd w.o.j.).

distinct statutes where the Legislature only intended for the conduct to be punished once. *See Garfias*, 424 S.W.3d at 58.

J.C. makes both arguments here. But, as to the first, the Court of Criminal Appeals has rejected the contention that aggravated assault causing bodily injury is always a lesser-included offense of aggravated robbery by threat in *Garfias v. State*. *See* 424 S.W.3d at 62; *see also Floyd v. State*, 714 S.W.3d 9, 14 (Tex. Crim. App. 2024); *cf.* TEX. PEN. CODE § 22.02(a)(1) (agg. assault causing bodily injury); TEX. PEN. CODE § 29.03(a)(3) (agg. robbery by threats). As to his second argument, J.C—just as in *Garfias*—was charged with aggravated robbery by threat and aggravated assault causing bodily injury based on the different conduct that occurred during the full interaction. *See Garfias*, 424 S.W.3d at 60-61 (concluding offenses of aggravated robbery by threat and aggravated assault causing bodily injury, as charged in Garfias's indictment, each contained element other did not and recognizing gravamen of offenses of aggravated robbery by threat and aggravated assault bodily injury are different, one focusing on threat and one focusing on actual harm inflicted on victim); *see also Floyd*, 714 S.W.3d at 14.

J.C. relies on the language within the concurrence in *Garfias* to contend he was subjected to double jeopardy because the State treated the events as one criminal transaction. But, even considering the concern set forth in that concurrence, Justice Cochran—the concurring author— still joined the majority in finding no double jeopardy violation apparent on the face of the record. *See Garfias*, 424 S.W.3d at 64 (Cochran, J., concurring). And, in any event, we are bound by the majority opinion in *Garfias*, not the concurrence. But, most importantly, our review of the pleadings fails to support J.C.'s assertion that the State treated the various acts of J.C. as a single criminal transaction. *See Nawaz*, 663 S.W.3d at 744 (requiring review of pleadings and relevant statutory provisions, not evidence presented at trial, to determine nature of State's case); *see, e.g.*,

*Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018); *Garfias*, 424 S.W.3d at 58–59. And J.C. identifies no controlling authority to the contrary. *See* TEX. R. APP. P. 38.1(i).

Thus, we conclude that double-jeopardy principles were not violated in this case.

### JURY CHARGE ERROR

In reviewing a claim of jury charge error, we first determine whether there was error. *Lozano v. State*, 636 S.W.3d 25, 29 (Tex. Crim. App. 2021); *In re C.C.*, No. 06-22-00057-CV, 2023 WL 1872368, at *2 (Tex. App.—Texarkana Feb. 10, 2023, pet. denied). The parties agree the trial court committed jury charge error when it failed to limit the appropriate culpable mental state definitions to their respective conduct elements. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.). This is supported by the record.

But, because appellant failed to lodge a timely objection to the jury charge in the trial court, we will reverse only if the error is so egregious that the defendant did not have a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see, e.g.*, *Lozano*, 636 S.W.3d at 29. Such egregious harm must involve actual harm, not just theoretical harm, and must affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Servin*, 582 S.W.3d at 631; *see, e.g.*, *Lozano*, 636 S.W.3d at 29. In considering whether harm is egregious, we review the entire record, including the jury charge, the evidence, the contested issues, the arguments of counsel, and anything else in the record that might inform our analysis. *Lozano*, 636 S.W.3d at 29.

Courts have repeatedly found that a jury charge that tracks the statutory language is generally not egregiously harmful. *See, e.g.*, *Poor v. State*, 715 S.W.3d 15, 34 (Tex. App.—Eastland 2024, pet. ref'd); *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd);

*see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Servin*, 582 S.W.3d at 633 (rejecting as egregiously harmful aggravated robbery jury charge which properly tracked statute because facts, as applied to law, in application paragraphs, pointed jury to appropriate portion of definitions). Thus, because the language used here tracks the statutory language in the Penal Code, this factor does not favor finding egregious harm. *See* TEX. PEN. CODE §§ 6.03(a)-(b), 29.02(a)(2); 29.03(a)(2).

Further, courts have held that egregious harm is not present where the subject of the error was not the focus at trial, either of the State or the defendant in presenting the evidence or argument to the jury. *See e.g., Servin*, 582 S.W.3d at 633 (holding charge error relating to mental state did not result in egregious harm where the defendant's mental state was not the focus at trial); *see also Herrera v. State*, 527 S.W.3d 675, 680 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (same). Here, a review of the record demonstrates that the focus at trial was whether J.C. was the perpetrator, not the mental state or conduct elements, with both the State and defense counsel presenting evidence and argument attempting to bolster or discredit identification testimony.

We therefore cannot conclude J.C. suffered egregious harm.[8]

## CONCLUSION

For these reasons, we affirm the trial court's order of adjudication and order of disposition.

Lori Massey Brissette, Justice

DO NOT PUBLISH

---

[8] J.C. also contends the trial court erred in sustaining the State's challenge for cause of venirepersons 19 and 20. But J.C. did not object—stating nothing on the record for the State's challenge to venireperson 20 and stating "okay" on venireperson 19—and his complaints are therefore not preserved for our review. *See, e.g.*, TEX. R. APP. P. 33.1; *Ortiz v. State*, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002); *see also In re A.V.*, No. 11–16–00078–CV, 2017 WL 2484348, at *2 (Tex. App.—Eastland June 8, 2017, no pet.) (mem. op.); *In re J.O.*, 38 S.W.3d 718, 720 (Tex. App.—San Antonio 2000, no pet.).